IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>ARRON PADDOCK,<br><br>                 Appellant,<br><br>    and<br><br>LOUISE MAY,<br><br>                 Respondent. | No. 86149-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Arron Paddock appeals a trial court order converting an order of legal separation to a decree of dissolution. Paddock claims that his former spouse improperly served him by mail with the motion to convert the separation order. Because the motion to convert was part of the same legal separation proceeding that Paddock initiated, original process was not required. Service of a motion by mail to the party's last known address comports with the applicable civil procedural rule and Paddock fails to establish a violation of due process. We affirm.

FACTS

Arron Paddock and Louise May were married in 2017 and began living in separate households on September 30, 2022. The couple married in the United Kingdom, but were residents of King County when they separated. On October 12, 2022, assisted by counsel, Paddock petitioned for an order of legal

separation in King County Superior Court. In December 2022, the parties entered into a CR 2A agreement, addressing among other issues, the division of the parties' assets.

On May 3, 2023, the trial court entered an agreed order of legal separation. The court also entered the following agreed orders: findings of fact and conclusions of law, a parenting plan for the parties' minor child, and an order of child support.[1]

More than five months later, on October 23, 2023, Paddock's counsel filed a notice of intent to withdraw from the case as of November 2, 2023. Counsel's notice provided an e-mail address and a physical address in Wales for Paddock's receipt of "all future pleadings in the case."[2] Counsel's notice of intent to withdraw was both mailed to Paddock and sent by e-mail to the addresses designated in the notice.

On November 7, 2023, six months after entry of the separation order, May moved to convert the legal separation order to a dissolution decree. May's declaration stated that the marriage was "irretrievably broken" and that the court-issued separation order was entered "at least 6 months ago." The hearing on the motion was scheduled for December 4, 2023 on the superior court ex parte calendar. May filed proof of service, indicating that an individual employed

[1] Contrary to Paddock's argument, the record reflects that the May 2023 final orders were "agreed" orders, despite language in one order that the underlying distribution between the parties of real property was "concluded under protest."

[2] According to Paddock's opening brief, he was "forced" to leave the United States in August 2023.

2

by May's counsel's office mailed the motion to convert the separation order, notice of the court date, and a proposed order to Paddock at the physical address provided by Paddock's former counsel.

A commissioner heard the motion on the scheduled date. Paddock did not appear. May's counsel confirmed that Paddock was provided with notice of the motion, indicating that because Paddock was "overseas," "we had to build in extra time." Counsel confirmed that Paddock had not formally responded to the motion, but represented that Paddock and May were "in contact" and Paddock was "well aware" of it.

The commissioner granted the motion, noting that the governing statute is "clear" and requires the court to convert the separation order on a motion after six months have elapsed. The court entered a written order on the same date, converting the separation order to a final divorce decree, finding that the separation order was entered at least six months previously and that the other spouse was properly notified of the motion.

Representing himself, Paddock appeals.

## Sufficiency of Service

Paddock primarily argues that service of the motion to convert the separation order by mail to an overseas party failed to comply with statutes and court rules that govern service of process, and thereby violated his right to due process. See RCW 4.28.180 (personal service for out of state parties) and CR 4(i) (alternative provisions for service of process in a foreign country). To the extent that Paddock's claims involve interpreting a statute and court rules, our

3

review is de novo. Nevers v. Fireside, Inc., 133 Wn.2d 804, 809, 947 P.2d 721 (1997).

RCW 26.09.150(2)(a) provides that, "[n]o earlier than six months after entry of a decree of legal separation, *on motion of either party*, the court *shall* convert the decree of legal separation to a decree of dissolution of marriage or domestic partnership." (Emphasis added.) Therefore, according to the clear language of the statute, all that is required to convert a separation order to a dissolution decree is a motion. While service of process requirements are both strictly construed and enforced to protect defendant's due process rights, once an action has been commenced, the requirements for serving subsequent pleadings and motions are "far less rigorous." 14A DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 50:1 (3d ed. 2018); see also Hastings v. Grooters, 144 Wn. App. 121, 131, 182 P.3d 447 (2008) (after action has been commenced, CR 5 allows papers to be served by leaving them with attorney's receptionist, but CR 5 does not apply to original service of process).

The law in Washington is clear. "[D]ue process does not require new original process" for a motion under RCW 29.09.150(2)(a). Marriage of Mu Chai, 122 Wn. App. 247, 249, 93 P.3d 936 (2004). Accordingly, May's motion to convert the order of legal separation had to comply with CR 5(b)(1) (outlining the accepted methods for the service of motions), not the rules applicable to service of original process. Mu Chai, 122 Wn. App. at 252; CR 5(a) (CR 5 applies to "every pleading subsequent to the original complaint.").

CR 5(b)(1) provides that service of motions on a party "shall be made by

delivering a copy to the party or the party's attorney *or by mailing it to the party's or the party's attorney's last known address* or, if no address is known, filing with the clerk of the court an affidavit of attempt to serve." (Emphasis added.) To effectuate service by mail, the party must deposit the pleadings "in the post office addressed to the person on whom they are being served, with the postage prepaid." CR 5(b)(2)(A). And, when withdrawing from representing a client, an attorney must file a notice of intent to withdraw that includes "the names and last known addresses of the persons represented by the withdrawing attorney." CR 71(c)(1). In this case, the proof of service established that May served the motion on Paddock by mailing it to him at "c/o 13 Shakespeare Ave, Penarth CF64 Wales"—the address for Paddock listed in former counsel's notice of intent to withdraw. Service of the motion by mail to Paddock's last known address thus satisfied the applicable procedural rule.

Paddock maintains that, contrary to counsel's representation at the hearing, he was unaware of May's motion. Paddock asserts that the address designated by his former counsel was the home of "mutual friends," where he has never lived or registered to vote, and that both May and her counsel had his correct contact information. Paddock further claims that the address was deficient because it omitted the "country name," and bore an "incomplete" postal code. As with the majority of factual assertions in Paddock's briefing, nothing in the appellate record substantiates Paddock's claims about actual notice, his correct address, or what May and her counsel knew. See RAP 10.3(a)(5) (party must include reference to the record for each factual statement in brief). And

5

critically, there is no dispute that the mailing address listed on the proof of service is the same physical address designated for "all future pleadings," in counsel's notice of intent to withdraw.[3]

To the extent that Paddock contends that the service by mail provisions of CR 5(b) for motions and subsequent pleadings are inadequate to satisfy due process, he provides no authority that supports his position. And even assuming that Paddock had no actual notice of the motion before the hearing, it is well-established that the test for due process is not whether actual notice is received, as legal sufficiency is determined by whether the notice was sent in a manner that was "reasonably calculated to reach the intended parties." In re Saltis, 25 Wn. App. 214, 219, 607 P.2d 316 (1980) (citing Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 318, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ("within the limits of practicability notice must be such as is reasonably calculated to reach interested parties")). "Under most circumstances, notice sent by ordinary mail satisfies due process because it is deemed reasonably calculated to inform interested parties of an impending action." Wash. Fed. Sav. v. Klein, 177 Wn. App. 22, 28, 311 P.3d 53 (2013) (addressing requirements of statute governing notice to creditors during probate).

Paddock fails to establish that the provisions of the Hague Convention on

---

[3] Paddock maintains that counsel's mailed notice of intent to withdraw was misdirected and he did not receive it until months after the court entered the order converting the separation order dissolution. But Paddock does not mention that the notice was also sent by e-mail. And the evidence Paddock relies on to support his claim of lack of notice is appended to his brief but not a part of the record on review. As explained infra, we do not consider material outside the designated record on appeal. See RAP 10.3(a)(8).

6

the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, T.I.A.S. No. 6638 (U.S. Treaty), 20 U.S.T. 361, 658 U.N.T.S. 163 (Hague Convention) applied to service of May's motion. The Hague Convention is a multilateral treaty "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988). Article 1 of the Hague Convention on Service provides that it applies in all cases "where there is occasion to transmit a judicial or extrajudicial document for service abroad." When the Hague Convention on Service applies, it preempts inconsistent methods of service prescribed by state law. Schlunk, 486 U.S. at 699. "Service," within the meaning of the Hague Convention, refers to "a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." Schlunk, 486 U.S. at 700. Here, because the sufficiency of service to *initiate* litigation against an individual in a foreign country is not an issue, the Hague Convention does not apply.

Paddock accomplished service of process to initiate the legal separation action and both parties participated in the proceeding in Washington. Washington State law and court rules govern the service of May's motion to convert the separation order.[4] As explained, service of the motion on Paddock

---

[4] Paddock's reliance on the Federal Rules of Civil Procedure that govern service of process, see Federal Rule of Civil Procedure (FRCP) 4, is misplaced

by mail complied with CR 5(b).

Paddock's briefing discusses a number of other issues related to litigation between the parties subsequent to the trial court's December 2023 order, the enforceability of the dissolution decree in the United Kingdom, the financial repercussions of the parties' CR 2A agreement, and his expenditure of funds to pursue dissolution in British courts. But, again, the facts Paddock discusses are outside of the appellate record. To the extent that some materials appended to Paddock's brief are relevant to these issues, we do not consider those materials because without permission from this court, an appendix to an appellate brief cannot include material outside the designated record on appeal. RAP 10.3(a)(8). Equally significant, Paddock fails to engage with the applicable statute, RCW 26.09.150(2)(a), in any meaningful way or explain how any of these issues relate to the trial court's ruling. The statute provides that the court "shall" convert the order upon a properly filed motion if the requisite six-month period has elapsed. RCW 26.09.150(2)(a). Paddock asserts in reply that shall "does not mean must," but to the contrary, "shall" is mandatory language. See, e.g., Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wn.2d 353, 368, 705 P.2d 1195 (1985) ("the term 'shall' is directory").

Paddock fails to establish error in the trial court's order granting the motion to convert the separation order.[5]

---

both because original process was not required and the federal rules, in general, do not apply to this state court proceeding.

[5] Although Paddock contends that May untimely served her motion, he is mistaken. Paddock's argument is premised on the timeframe for filing a response to an initial complaint when a defendant is personally served with

Attorney Fees on Appeal

May requests attorney fees on appeal under RAP 18.9, which provides the court with discretion to order a party to pay fees for filing a frivolous appeal. RAP 18.9(a). "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010). "[A]ll doubts as to whether the appeal is frivolous should be resolved in favor of the appellant." Streater v. White, 26 Wn. App. 430, 435, 613 P.2d 187 (1980). Applying this high standard, considering the record as a whole, and construing all doubts about frivolousness in favor of Paddock, we decline to exercise our discretion to award fees as a sanction.

Affirmed.

_Smith, C.J._

WE CONCUR:

_Díaz, J._

_Birk, J._

---

original process out of state. See CR 12(a)(3) (defendant must serve an answer within 60 days of personal service of the summons if service occurs out of state). Again, this proceeding was initiated by Paddock's petition while both parties were in Washington. May was required to serve the motion five days prior to the hearing on the matter. See CR 6(d). Service was effective according to the rules as of November 10, 2023, and the hearing took place more than three weeks later. CR 5(2)(A).

9